COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Beales
Argued by teleconference


MUSTAFA SALAAM

                                                        MEMORANDUM OPINION* BY
v.        Record No. 1882-05-1                       JUDGE ROBERT P. FRANK
                                                           DECEMBER 12, 2006
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                                Lydia C. Taylor, Judge[1]

            James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
            appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Mustafa Salaam, appellant, was convicted, in a jury trial, of first-degree murder, in

violation of Code § 18.2-32, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1.  On appeal, he contends the trial court erred in admitting into evidence a

statement made by the decedent just prior to his death.  Finding any error harmless, we affirm the

judgment of the trial court.

                                        BACKGROUND

        On October 15, 1999, Juawann Coward and appellant engaged in a fistfight in the middle

of DeBree Avenue in Norfolk.  Nina Fenner, who had known Coward for a month, testified that

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Johnny C. Morrison denied appellant's first motion *in limine* on the first issue he
raises on appeal.  Subsequent to the United States Supreme Court's decision in Crawford v.
Washington, 541 U.S. 36 (2004), appellant filed a second motion *in limine*.  Judge Charles E.
Poston denied that motion.

she witnessed the fight. She testified that she saw appellant retreat into a building and return with a gun. Coward was still in the middle of the street when appellant returned. Appellant pointed the gun at Coward and shot him. Coward ran behind an apartment building, and appellant followed. Coward finally stopped at the doorway of another apartment building where he fell to the ground bleeding. Ms. Fenner approached Coward, who was on his hands and knees. She could hear him crying, and testified that he said, "I'm shot. I'm dying, and Mustafa shot me."

When initially questioned by police that night, Fenner told police she did not know what happened, did not see the shooting, and did not want to get involved. The next day, however, she told police about Coward's statement and said that she witnessed appellant shoot Coward. Fenner admitted she has been convicted of two larceny misdemeanors.

Dora Hollowell was returning to her home at 404 West 26th Street when she witnessed the fight between appellant and Coward on DeBree Avenue. While observing the fight, she saw Coward take off the t-shirt he was wearing and throw it on the ground. As she was entering her apartment, she heard the first gunshot. She testified that Coward ran past her screaming, "Ah, ah, it hurts." Appellant, running behind Coward, was pointing a black gun which looked like a "45 or .9mm." Appellant fired a second shot at Coward as they crossed a grass median, shouting, "I'm going to kill you." Coward reached an apartment in the neighboring building at 410 West 26th Street. He began beating on the door and screaming for help. Coward then collapsed on the doorstep. Appellant stood over him and fired two or three more rounds into Coward's body. Appellant then ran quickly away in the direction of DeBree Avenue, heading north on that road. Hollowell testified that her fiancé, who was inside their apartment during the incident, had heard the gunshots and screaming and called the police. The day after the shooting, Hollowell identified appellant from a photographic lineup of six suspects.

Detective Charles Payne was dispatched to the 400 block of West 26th Street and observed Coward's body positioned on his hands and knees. Payne noticed "a considerable amount of blood" on the doorstep of 410 West 26th Street where Coward had fallen, along with a gunshot wound to Coward's back.

Investigator Martin investigated the crime scene. He recovered a white t-shirt from the 2600 block of DeBree Avenue, where Hollowell saw Coward remove his shirt during the fight. Martin collected six .9mm cartridge casings that followed appellant's pursuit of Coward from the location of the initial fight on DeBree Avenue to the location where Coward's body was found in front of 410 West 26th Street.

Corporal Huffman, who was working as a homicide detective at the time of the shooting, also investigated the crime scene. He testified that a blood trail led from the area of the initial fight to the door of 410 West 26th Street where Coward's body was found.

Vernetta Boyd lives at 436 West 29th Street, which is located three blocks north of the crime scene between DeBree and Colonial Avenues. She was mowing her lawn on October 19, 1999, and discovered a gun in her yard. She turned the firearm over to police, who were able to identify the weapon as an unloaded .9mm pistol. Police investigators recovered no prints of value from the gun.

Paul Murphy, a firearms expert, testified that the bullet casings recovered from the scene matched the gun found in Boyd's yard. The gun also matched two bullets taken from the decedent during an autopsy.

The medical examiner testified that the deceased sustained five separate gunshot wounds. She was able to determine that two gunshot wounds entered the decedent through his back, and one gunshot wound entered the decedent through the back of his thigh. She opined that either, or both, of the wounds to Coward's back were the cause of death.

- 3 -

In two separate motions *in limine*, appellant asked the trial court to exclude Coward's statement to Fenner. The court denied both motions, and this appeal follows.

ANALYSIS

Appellant argues that Coward's statement to Fenner does not qualify as a dying declaration exception to the hearsay rule and, thus, should have been excluded from trial. Alternatively, he contends that the statement violates the Confrontation Clause of the Sixth Amendment of the United States Constitution as interpreted by the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004).

Assuming without deciding that the trial court erred in admitting Coward's statement at trial, we find that, in light of the other evidence adduced at trial, the error was harmless beyond a reasonable doubt.

"'It is a well recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (quoting Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987)). Similarly, "an appellate court decides cases 'on the best and narrowest ground available.'" Id. (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). "'[V]iolations of the Confrontation Clause . . . are subject to harmless error review.'" Id. (quoting United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004)).

"When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). "'We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of our own reading of the record and on what seems to us to have been the probable impact on the

- 4 -

fact finder.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Green v. Commonwealth, 32 Va. App. 438, 446, 528 S.E.2d 187, 191 (2000)). "'An error is harmless only when it plainly appears from the record and the evidence that the error has not affected the verdict. Whether an error does not affect the verdict must be determined without usurping the jury's fact finding function.'" Id. (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992)).

We acknowledge that Fenner gave conflicting testimony, that she failed to appear in court for the second trial, and that her credibility was impeached by her three prior misdemeanor convictions. However, even removing Fenner's testimony altogether, including her recitation of Coward's dying declaration, the evidence of appellant's guilt was overwhelming.

Hollowell, whose credibility was not challenged by appellant at trial, was an eyewitness to the shooting. Hollowell positively identified appellant as the shooter, both at trial and at a photographic lineup presented to her by police. Hollowell testified that she saw appellant shoot Coward multiple times. The gunshot wounds to Coward's back and back of his leg are consistent with Hollowell's testimony that appellant ran behind Coward as he shot him, and with her testimony that appellant stood over Coward, who was on his hands and knees, when appellant fired the last shots into him.

Observations of the police officers responding to the scene also corroborated the account of events given by Hollowell. Officers found a white t-shirt in the area where Hollowell testified that she saw Coward remove his shirt. A blood trail led from the area where Hollowell observed the initial fight to the apartment door where Coward's body was found. The .9mm cartridge casings recovered from the scene corresponded to the three different locations where Hollowell testified that shots had been fired. The gun that was recovered from Boyd's yard matched the description of the gun Hollowell saw appellant holding, and police determined that weapon fired

the shots that killed Coward. The location where the gun was found was consistent with the direction that appellant took while fleeing the scene.

Coward's dying declaration as to the identity of his shooter was merely cumulative of the testimony of the eyewitness Dora Hollowell. Even if this statement, and Fenner's entire testimony, had been excluded at trial, it plainly appears from the remaining evidence that the verdict would not have been affected. Thus, we find that any error in admitting Coward's dying declaration was harmless beyond a reasonable doubt.

### CONCLUSION

For the foregoing reasons, we find that any error in admitting Coward's statement into evidence at trial was harmless. Accordingly, the trial court is affirmed.

Affirmed.